**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mae C. ANDERSON,
Defendant–Appellant.**

**No. 86–3173.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 3, 1988.

Decided June 28, 1988.

Joseph Schlesinger, Asst. Federal Public Defender, Seattle, Wash., for defendant-appellant.

Andrew R. Hamilton, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before WRIGHT and CANBY, Circuit Judges, and VUKASIN,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

We consider three issues in this appeal by Mae C. Anderson from convictions of unlawful delay and embezzlement of mail: (1) errors in the admission of evidence, (2) ineffective assistance of counsel, and (3) errors in imposition of sentence. Only the third issue has merit. We affirm the convictions and remand for resentencing.

* Honorable John P. Vukasin, Jr., United States District Judge, Northern District of California,

Anderson, a mail carrier, had a motor vehicle accident in 1985 when her postal truck collided with a boy on a bicycle. Anderson failed to report the accident to her superiors. The boy's mother, Susan Lucich, did so and Postmaster Andritch ordered an investigation which resulted in Anderson's discharge.

She was later reinstated but harassed the Lucich children, failed to deliver the Lucich mail, and was transferred to another mail route. Ms. Lucich then began to receive harassing telephone calls, one of which was traced to Anderson. When confronted by law enforcement persons, Anderson agreed that the calls would stop, which they did. In state court, she pleaded guilty to a charge of making harassing calls.

But trouble with delivery of mail to Ms. Lucich continued and she complained. The Postal Service suspected Anderson and gave her intentionally missorted mail, including two items for Ms. Lucich, one with cash and the other a treasury check. She secreted the two envelopes and admitted that she had removed them intentionally from the post office.

Upon her conviction of delaying, 18 U.S.C. § 1703(a), and embezzling mail, 18 U.S.C. § 1709, she was given concurrent sentences to one year imprisonment, suspended on condition that she serve 60 days in jail. She was also given three years probation and fines of $50 on each count.

I. *Testimony Concerning Harassing Telephone Calls*

██ The court admitted evidence of the harassing telephone calls. Anderson contends that it erred because the government did not establish a prerequisite for admitting evidence of prior criminal conduct, Fed.R.Evid. 404(b), and the danger of unfair prejudice outweighed the probative value, Fed.R.Evid. 403.

sitting by designation.

## A. Rule 404(b)

Anderson concedes that the evidence was offered for the proper purpose. She argues that one judicially mandated prerequisite for admitting evidence of other crimes was absent: clear and convincing proof of the crimes. *See United States v. Bailleaux*, 685 F.2d 1105, 1109–10 (9th Cir. 1982).

Only one call, made in December, was linked to Anderson by direct evidence. Lucich testified that the other calls were the same as the December call, and that the calls stopped after Anderson was called by the police. When confronted by the Sheriff, Anderson said the calls would stop. The record contains clear and convincing proof, albeit circumstantial, that Anderson made the other calls.

## B. Rule 403

Anderson offered to stipulate to making one harassing call. She argues that evidence of the others should have been excluded because the danger of unfair prejudice outweighed the probative value.

She admitted that she removed the letters intentionally. The dispositive issue was criminal intent. The harassing calls were probative to show that Anderson's possession of the letters was not by mistake or accident.

Judge Tanner did not provide an analysis for the admission of the evidence over Anderson's objection. Although we have asked district judges to provide an explicit statement of the balancing process, we have not required it when the record indicates implicitly that the weighing process was conducted. *See, e.g., United States v. Johnson*, 820 F.2d 1065, 1069 & n. 2 (9th Cir.1987). Because evidence of the other calls merely reinforced other evidence of animosity toward Lucich, the prejudice was minimal. We are satisfied that the court conducted a proper balancing under Rule 403, and did not abuse its discretion.

## II. *Ineffective Assistance of Counsel*

█ Anderson argues that her counsel was ineffective because he failed to request an instruction supporting the theory of her defense: that she was not guilty of embezzlement because she intended to return the letters.[1]

Counsel's performance is constitutionally infirm if it falls below an objective standard of reasonableness and there is a reasonable probability that, but for the inadequate representation, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 690–91, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674 (1984); *United States v. Schaflander*, 743 F.2d 714, 717–18 (9th Cir.1984), *cert. denied*, 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985).

The instruction advanced by Anderson on appeal is contrary to law. The rule is:

> The intent to permanently deprive the owner of his property is not an element of the crime of embezzlement. Rather, cases indicate that the 'felonious' intent with which embezzlement is committed consists of the intent to appropriate or convert the property of the owner; *the simultaneous intent to return the property or to make restitution does not make the offense any less embezzlement.*

*United States v. Waronek*, 582 F.2d 1158, 1161 n. 4 (7th Cir.1978); *see United States v. Faulkner*, 638 F.2d 129, 130 (9th Cir. 1981) (citing *Waronek*). The instructions offered at trial, and used by the court, reflect accurately the required proof of embezzlement. Counsel's performance was not unreasonable in failing to request an instruction that is contrary to law.

1. Ineffectiveness of counsel claims are raised ordinarily by collateral attack under 28 U.S.C. § 2255. *See United States v. Birges*, 723 F.2d 666, 670 (9th Cir.), *cert. denied*, 466 U.S. 943, 104 S.Ct. 1926, 80 L.Ed.2d 472 (1984). Direct appeal does not allow the defendant to develop facts outside the record that are usually necessary to analyze this claim. *See id.* Here, however, it is not necessary to expand the record because in determining reasonableness we need go no further than ruling that the instruction is contrary to law.

## III. *Sentencing on Both Counts*

■ Anderson contends that she was punished twice for the same criminal conduct.[2] She argues that the convictions for delay and embezzlement arose from a single criminal act, and that Congress did not intend multiple punishments.

The government argues that the convictions arose from distinct transactions: delay of mail when Anderson concealed and failed to follow proper procedures for missorted mail, and embezzlement when she appropriated the letters and removed them from the post office some five hours after the concealment.

■ Multiple punishments for a single act or transaction that constitutes more than one offense are permissible if Congress so intended. *See Prince v. United States*, 352 U.S. 322, 328–29, 77 S.Ct. 403, 406–07, 1 L.Ed.2d 370 (1957); *Albernaz v. United States*, 450 U.S. 333, 336–37, 101 S.Ct. 1137, 1140–41, 67 L.Ed.2d 275 (1981); *United States v. Wylie*, 625 F.2d 1371, 1381 (9th Cir.1980), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981).

■ The analytic framework for determining congressional intent differs somewhat from ordinary statutory interpretation. A clear indication of legislative intent on the statutes' face or in the legislative history is of course dispositive. *See Garrett v. United States*, 471 U.S. 773, 779, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985); *United States v. Stafford*, 831 F.2d 1479, 1480–81 (9th Cir.1987). In the absence of a sufficient indication, courts rely on the presumptive test for congressional intent articulated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *Stafford*, 831 F.2d at 1481. Should the inquiry into congressional intent reveal an ambiguity, the punishment provisions are to be construed in favor of lenity. *See Albernaz*, 450 U.S. at 342, 101 S.Ct. at 1144.

## A. *Single or Separate Criminal Transactions*

The government's argument rests on the mistaken notion that the embezzlement was not committed until Anderson removed the mail from the post office. Mail matter need not be removed from the post office to make a conversion. *See Kelley v. United States*, 166 F.2d 343, 346 (9th Cir.1948). In *Kelley*, we ruled that the conversion took place when an employee removed packages from the mail handling area and concealed them unlawfully. *Id.*

The government has not argued that Anderson lacked the mens rea for conversion at the time she concealed the letters. The necessary act for both crimes was committed at the time she first concealed the letters. These convictions arose from a single criminal transaction.

## B. *Congressional Intent*
### 1. The Statutory Provisions

Anderson was convicted under section 1703(a):

> Whoever, being a Postal Service officer or employee, *unlawfully secretes, destroys, detains, delays, or opens* any letter, postal card, package, bag, or mail ... shall be fined not more than $500 or imprisoned not more than five years, or both.

18 U.S.C. § 1703(a) (1982) (emphasis added), and section 1709:

> Whoever, being a Postal Service officer or employee, *embezzles* any letter, postal card, package, bag, or mail, ... or *steals, abstracts, or removes* ... any article or thing contained therein, shall be fined not more than $2,000 or imprisoned not more than five years, or both.

*Id.* § 1709 (emphasis added). These provisions are unambiguous on their face, the offenses are embodied in separate sections of the code, and the punishments are somewhat different. This alone, however, is not a sufficient indication of congressional in-

---

2. Anderson failed to object to sentencing on both counts. Imposition of an erroneous sentence may be reviewed for plain error. *See United States v. Eastman*, 758 F.2d 1315, 1318 (9th Cir.1984); Fed.R.Crim.P. 52(b). Although the court imposed concurrent sentences, the two $50 fines and uncertain collateral effect of an improper sentence make this issue reviewable. *Cf. United States v. De Bright*, 730 F.2d 1255, 1258–59 (9th Cir.1984) (en banc).

tent to conclude our analysis. *See Albernaz v. United States*, 450 U.S. at 336, 101 S.Ct. at 1140.

## 2. Legislative History

Prior to 1909, a single statutory section made it unlawful for a postal employee to unlawfully detain, delay, or open mail, or secret, embezzle, or destroy mail.[3] Rev. Stat. § 3891. A major revision to Title 18 in 1909 consolidated existing offenses by postal employees into a single section, and imposed a longer term of imprisonment.[4] The Reviser's Notes explain that the new section was "derived from three sections of the Revised Statutes, which punish any person employed in the Postal Service for unlawfully delaying or interfering with the mail." S.Rep.No. 10, 60th Cong., 2d Sess. 21 (1909).

Until 1948, the delay and embezzlement offenses remained in the same section, subject to the same punishment. Congress then separated these provisions into their current form, sections 1703 and 1709. Act of June 25, 1948, ch. 645, 62 Stat. 683, 778. The Reviser's Notes do not explain this action. They indicate only that the fine for section 1709 offenses was increased to "conform with other comparable sections. (See sections 1702 and 1708 of this title.)" H.R. 304, 80th Cong. 1st Sess.App., *reprinted in*, 1948 U.S.Code Cong.Serv. (Title 18 U.S.C. Crimes and Criminal Procedure) 2434, 2575–77.

The legislative history does not reveal Congress's intent. It does suggest that Congress enacted a scheme to punish two broad categories of wrongful acts; those that delay mail for unlawful purposes (delay and detain), and those that interfere with mail by preventing delivery to the addressee (secrete, embezzle, destroy, steal, abstract, and remove).

Although Congress made unlawful virtually every act that could result in delay or interference, it did not clearly or expressly state an intention to impose multiple punishments for a single act that encompassed more than one offense. The Seventh Circuit suggests that when two crimes are defined in a single section of the Code, "it is not unreasonable to expect to find in the legislative history some affirmative expression of an intent to punish for both if such an intent exists." *United States v. Makres*, 598 F.2d 1072, 1075 (7th Cir.1979). Here there is none.

## 3. Blockburger Test

Whether Congress intended to make the same conduct punishable under two criminal provisions is resolved most often by the test enunciated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *See Ball v. United States*, 470 U.S. 856, 861, 105 S.Ct. 1668, 1671, 84 L.Ed.2d 740 (1985). We have explained the appropriate inquiry:

> Where the same act or transaction constitutes a violation of two distinct statutory provisions, *the test which is applied for determining whether there are two offenses or only one turns on 'whether each provision requires proof of a fact which the other does not.'* The 'proof of a fact' referred to under this test does not simply relate to whether the same evidence is used at trial to prove the two charges. Instead, the test focuses on the statutory elements of the different offenses.

---

3. Offenses under section 3891 were punishable by a fine of not more than $500 and/or one year of imprisonment. A postal employee who secreted, embezzled, or destroyed a letter containing securities, money, or articles of value was subject to imprisonment at hard labor for not less than one year, nor more than five years. Rev.Stat. § 5467. The 1909 revision eliminated the distinction between valuable and nonvaluable mail.

4. "Whoever, being a postmaster or other person employed in any department of the postal service, *shall unlawfully detain, delay, or open* any letter, postal card, package, bag, or mail intrusted to him or which shall come into his possession, ... *or shall secrete, embezzle, or destroy* any such letter, postal card, package, bag, or mail; *or shall steal, abstract, or remove* from any such letter, package, bag, or mail, any article or thing contained therein, shall be fined not more than $500 or imprisoned not more than five years, or both." Act of Mar. 4, 1909, ch. 321, §§ 195, 196, 35 Stat. 1125, 1126 (codified at 18 U.S.C. § 318 (1940)) (emphasis added).

*United States v. Wylie,* 625 F.2d 1371, 1380–81 (9th Cir.1980) (emphasis added), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981).

Where both statutory offenses require proof of a fact which the other does not, *Blockburger* establishes a presumption that Congress intended to punish each separately. *See Stafford,* 831 F.2d at 1485. The rationale of the rule rests on the assumption "that Congress ordinarily does not intend to punish the same offense under two different statutes." *Ball,* 470 U.S. at 861, 105 S.Ct. at 1671. But when it establishes offenses with uncommon elements, it is presumed to have created separate offenses and intended separate punishment.

Despite frequent congressional silence on the question of multiple punishments, we apply this rule on the assumption that Congress knows of *Blockburger* and legislates with it in mind. *See Albernaz v. United States,* 450 U.S. 333, 341–42, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275 (1981). The presumptive force of *Blockburger* is strong, but is not conclusive in the face of contrary indications. *See Garrett,* 471 U.S. at 779, 105 S.Ct. at 2411; *Albernaz,* 450 U.S. at 340, 101 S.Ct. at 1142. The ultimate question remains a factual inquiry into legislative intent. *See Garrett,* 471 U.S. at 779, 105 S.Ct. at 2411.

The traditional application of *Blockburger* indicates that Congress intended multiple punishment; the delay offense requires proof of an act that delays while embezzle-

ment requires proof of a conversion.[5] Despite this analysis, and although multiple punishments have been allowed for similar postal offenses,[6] a recent application of *Blockburger* by the Supreme Court suggests that a contrary conclusion is warranted here.

In *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), the Court considered whether Congress intended multiple punishments for a single act that was the basis for two convictions: unlawful receipt and unlawful possession of a firearm. Applying *Blockburger,* it concluded that Congress could not have intended multiple punishments because proof of one offense *"necessarily* includes proof" of the other offense. *Id.* 470 U.S. at 862, 105 S.Ct. at 1672 (emphasis in original). It recognized that a firearm is necessarily possessed when received.

Proof of embezzlement will necessarily include proof of unlawful delay. The mens rea requirement of the delay offense is satisfied by the criminal intent underlying embezzlement, and the act of conversion will cause delay inevitably, at least as the term is commonly used.[7] The *Ball* application of *Blockburger* indicates that Congress did not intend multiple punishments.

Although the traditional application of *Blockburger* suggests that Congress intended multiple punishments, we are persuaded that the analysis under *Ball* is controlling. In addition, one of the assumptions underlying *Blockburger,* that Con-

---

**5.** Unlawful delay requires two elements of proof: (1) an act that causes a delay in mail, and (2) intent to do so for an unlawful purpose. *See Williams v. United States,* 273 F.2d 469, 470 (10th Cir.1959). Embezzlement requires proof of lawful possession, criminal intent to convert, and an act of conversion. *See Waronek,* 582 F.2d at 1161 & n. 4.

**6.** *See Jenkins v. United States,* 363 F.2d 24, 24 (5th Cir.1966) (stealing letter from authorized mail receptacle, 18 U.S.C. § 1708, and abstracting contents of letter, *id.*); *United States v. Gumbs,* 246 F.2d 441, 443 (2d Cir.1957) (theft of letter from letter box, 18 U.S.C. § 1708, and possession of contents of that letter, *id.,* because under facts of case, possession of letter not a "necessary incident" of theft); *Kinsella v. Looney,* 217 F.2d 445, 446 (10th Cir.1954) (stealing

letter from letter box, 18 U.S.C. § 1708, and abstracting and removing contents from letter, *id.*); *McKee v. Johnston,* 125 F.2d 282, 283 (9th Cir.), *cert. denied,* 316 U.S. 702, 62 S.Ct. 1306, 86 L.Ed. 1771 (1942) (taking mail bags from train and abstracting contents of mail bags); *Hunt v. Hudspeth,* 111 F.2d 42, 44 (10th Cir.1940) (embezzling mail, 18 U.S.C. § 317, and injuring sacks containing embezzled mail, 18 U.S.C. § 312).

**7.** One court has suggested that mail cannot be delayed if it has been embezzled because "delay is only relevant to those parcels which remain within the stream of commerce." *United States v. Evans,* 45 F.R.D. 441, 443 (S.D.N.Y.1968). *But see United States v. Davis,* 484 F.Supp. 26, 28 (E.D.Mich.1979) (criticizing *Evans* ).

gress knew of the rule and legislated with it in mind, is absent here. *Blockburger* was not decided until 1932, long after the criminal provisions in question had been established. Based on these considerations, we conclude that Congress did not intend multiple punishments for a single act constituting delay and embezzlement.

This conclusion is supported by a common-sense view of the statutory scheme. The delay offenses reach acts that interrupt temporarily (the mail arrives eventually) while the remaining offenses reach acts that interfere permanently (the mail never arrives). Congress must have recognized that an intended act of permanent interference could be frustrated, yet result in temporary interruption or delay. It is a reasonable inference that it intended to punish temporary interruption to the same extent as a completed act of permanent interference. The original grouping of the offenses and the common punishment support this conclusion. There is no indication whatsoever that it intended to punish an offender twice, once for a temporary interruption and once for the permanent interference.

## CONCLUSION

The convictions are AFFIRMED. Although it was proper for the government to prosecute for embezzlement and delay, Anderson cannot be punished for both. The entry of judgment and sentence on one conviction must be vacated.[8] *Ball,* 470 U.S. at 864–65, 105 S.Ct. at 1673; *United States v. Palafox,* 764 F.2d 558, 564 (9th Cir.1985) (en banc). This will avoid "both the punitive collateral effects of multiple convictions as well as the direct effects of multiple sentences." *Palafox,* 764 F.2d at 564.

We REMAND with instructions to stay the judgment and sentence on one count. The judgment and sentence on that count

are to be vacated upon service of the sentence on the remaining conviction.

---

8. Our procedure is to order the sentence and judgment stayed pending completion of one sen-

tence. *Palafox,* 764 F.2d at 564.